1

2   JOHN F. MURTHA, ESQ.
    **Nevada Bar No. 835**
3   BRENOCH R. WIRTHLIN, ESQ.
    **Nevada Bar No. 10282**
4   WOODBURN AND WEDGE
    Sierra Plaza
5   6100 Neil Road, Ste. 500
    Reno, Nevada  89511
6   Telephone:  775-688-3000
    Facsimile  :  775-688-3088
7   jmurtha@woodburnandwedge.com

8
    Attorneys for Trustee
9   Angelique L.M. Clark

10              UNITED STATES BANKRUPTCY COURT

11                    DISTRICT OF NEVADA

12                          * * *

13

14   In re:                          Case No.  BK-08-51131-GWZ
                                     Chapter    7
15   CETUS MORTGAGE, LTD.

16          Debtor**.**
     _____/
17   ANGELIQUE L.M. CLARK,          Adv. No. 10-05049-GWZ
     TRUSTEE,
18
19          Plaintiff,              **MOTION TO APPROVE TRUSTEE'S**
                                    **COMPROMISE OF AVOIDANCE**
20        vs.                       **ACTIONS PURSUANT TO FRBP 9019**

21   RALPH L. ALBRIGHT and
22   CAROL L. ALBRIGHT, Trustees of   Hearing Date:    June 8, 2011
     the Ralph Albright Family Trust;  Hearing Time:    2:00 p.m.
23   RALPH L. ALBRIGHT, Trustee of the Est. Time:       45 Minutes
     Ralph Albright Drilling Co. Profit Set By:         By the Court at a
24   Sharing Plan and Trust; and                        hearing on 03/09/11
     NEVADA COMPUTER LEASING,
25   a Nevada Corporation,

26          Defendants.
27   _____/

28   ///

ANGELIQUE L.M. CLARK,                    Adv. No.:  10-05050-GWZ
TRUSTEE,

       Plaintiff,

    vs.

WILLIAM E. BECKER and
SHARON L. BECKER, Trustees
of the Becker Family Trust,

       Defendant.
_____/
ANGELIQUE L.M. CLARK,                    Adv. No. 10-05051-GWZ
TRUSTEE,

       Plaintiff,

    vs.

PAUL A. BIBLE, Trustee
of the Bible Mousel, PC PSP
fbo Paul A. Bible; and
PAUL A. BIBLE, Trustee
of the Bible Family Trust.

       Defendants.
_____/
ANGELIQUE L.M. CLARK,                    Adv. No. 10-05053-GWZ
TRUSTEE,

       Plaintiff,

    vs.

MICHAEL G. BRIERLEY and
ANITA BRIERLEY, Trustees
of the Brierley Family Trust; and
MICHAEL G. BRIERLEY and
ANITA BRIERLEY, Trustees
of the Brierley Construction
Company Pension Trust,

       Defendants._____/

///

_____
Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Compromise Motion P.2

1
2
ANGELIQUE L.M. CLARK,                    Adv. No. 10-05055-GWZ
TRUSTEE,

3
           Plaintiff,

4
       vs.

5
6
BUSINESS & PROFESSIONAL
COLLECTION SERVICE, INC., a
7
Nevada corporation,

8
           Defendant.
_____/
9
ANGELIQUE L.M. CLARK,                    Adv. No.  10-05057-GWZ
TRUSTEE,
10

11
           Plaintiff,

12
       vs.

13
NICK CARANICA; and
STELLA CARANICA,
14

15
           Defendants.
_____/
16
ANGELIQUE L.M. CLARK,                    Adv. No. 10-05060-GWZ
TRUSTEE,
17

18
           Plaintiff,

19
       vs.

20
ROBERT J. FRICKE, Trustee of
the Robert J. Fricke and Paule-
21
Colette Fricke 2001 Family Trust,

22
           Defendant.
_____/
23

24
/ / /

25
/ / /

26
/ / /

27

28

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Compromise Motion P.3

ANGELIQUE L.M. CLARK,                      Adv. No. 10-05061-GWZ
TRUSTEE,

        Plaintiff,

    vs.

ESLEY HARDEN and
MARIE HARDEN, Trustees
of the Harden Family Trust,

        Defendant.
_____/

ANGELIQUE L.M. CLARK,                      Adv. No. 10-05062-GWZ
TRUSTEE,

        Plaintiff,

    vs.

BARRY HICKERSON and
VALERIE HICKERSON, Trustees
of the Hickerson Family Trust,

        Defendant.
_____/

ANGELIQUE L.M. CLARK,                      Adv. No. 10-05065-GWZ
TRUSTEE,

        Plaintiff,

    vs.

JOHN R. LINDELL and
BARBARA A. LINDELL,
Trustees of the John R.
Lindell Family  Trust,

        Defendant.
_____/

////

///

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Compromise Motion P.4

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05066-GWZ
TRUSTEE,

       Plaintiff,

    vs.

JOHN R. LINDELL, Trustee
of Lindell's Painting Service
Money Purchase Pension Plan,

       Defendant.
_____/

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05068-GWZ
TRUSTEE,

       Plaintiff,

    vs.

CYNTHIA MORREY,

       Defendant.
_____/

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05069-GWZ
TRUSTEE,

       Plaintiff,

    vs.

BARBARA E. MOSS,

       Defendant.
_____/

///

///

///

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05074-GWZ
TRUSTEE,

       Plaintiff,

  vs.

RICHARD STARKWEATHER,
Trustee of the Starkweather
Family Trust,

       Defendant.
_____/

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05075-GWZ
TRUSTEE,

       Plaintiff,

    vs.

JACK R. TUTTLE; NANCY R.
TUTTLE; and STEVEN A. TUTTLE,

       Defendants.
_____/

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05076-GWZ
TRUSTEE,

       Plaintiff,

    vs.

GEORGE P. YOUNG; and
SHIRLEY YOUNG,

       Defendants.
_____/

///

///

///

///

---

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Compromise Motion P.6

ANGELIQUE L.M. CLARK,
TRUSTEE,

Adv. No. 10-05077-GWZ

     Plaintiff,

     vs.

JOHN J. DOUGLASS; CAROL
K. DOUGLASS; DANIEL P.
DOUGLASS; and JACK and
BARBARA DOUGLASS, Trustees
of the Jack and Barbara Jo
Douglass Living Trust

     Defendants.

_____/

ANGELIQUE L.M. CLARK,
TRUSTEE,

Adv. No. 10-05078-GWZ

     Plaintiff,

     vs.

STEVEN L. MOSS, DAVID E. HALD,
C. GARO GHOLDIAN, JONATHAN
S. GARY-SAGE and JOHN SCOTT,
in their capacities as the Trustees of
the Urologic Surgeons Ltd. Profit
Sharing Plan; Trustees of Urologic
Surgeons Ltd. Profit Sharing Plan
and Trust fbo Steven Moss; and
Trustees of the Urologic Surgeons,
Ltd. Profit Sharing Plan and Trust
fbo John Scott,

     Defendants.

_____/

///

///

///

---

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Compromise Motion P.7

ANGELIQUE L.M. CLARK,                    Adv. No. 10-05079-GWZ
TRUSTEE,

           Plaintiff,

    vs.

STEVEN L. MOSS, in his capacity
as Trustee of the Moss Family Trust;
and MOSSNEVADA,LLC, a Nevada
limited liability company,

           Defendants.
_____/

    Trustee Angelique L.M. Clark ("Clark"), by and through her attorneys of record, Woodburn and Wedge, hereby moves this honorable Court for an order approving her compromise of the Estate's claims (11 USC §§ 544, 547, 548) against all of the Defendants in the above-captioned adversary proceedings ("Avoidance Actions"). This Motion is brought pursuant to the provisions of FRBP 9019(a). In support of her Motion Clark makes the following report to the Court.

I

## INTRODUCTION

    1.    Cetus Mortgage, Ltd. ("Cetus") was a Nevada corporation with its principal place of business in Washoe County, Nevada.

    2.    Cetus was licensed as a mortgage company by the Mortgage Lending Division of the State of Nevada Department of Business and Industry and was engaged in the business of brokering and servicing loans secured by residential and commercial properties located mostly in Northern Nevada.

///

3.      Typically, loans brokered by Cetus were funded by loans solicited from third party lenders willing to lend funds to Cetus borrowers. The loans brokered by Cetus were occasionally funded by a single lender, but in most instances loans were funded with monies pooled from groups of lenders.

4.      Cetus allowed its Nevada mortgage company license to expire without renewal on June 30, 2008, and in July 2008, the State of Nevada, Department of Business and Industry, Division of Mortgage Lending seized its assets.

5.      On July 9, 2008, Cetus filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code commencing the underlying Bankruptcy Case. Clark was appointed Trustee of Cetus' bankruptcy estate. The Chapter 11 proceedings were subsequently converted to proceedings under Chapter 7.

6.      Prior to Cetus seeking bankruptcy relief, the Defendants participated as lenders in numerous loans that had been brokered by Cetus.

7.      On September 24, 2010, and September 27, 2010, Clark filed Amended Complaints against all of the Defendants in the Avoidance Actions seeking to set aside certain alleged fraudulent transfers pursuant to 11 USC §548 and, in some instances, seeking to set aside certain alleged preferential transfers pursuant to 11 USC §547.

8.      On November 18, 2010, the Defendants filed a Joint Motion to Dismiss for Failure to State a Claim ("Rule 12 Motion") (Docket No. 21 in Adv. Pro. 10-5049) and a Joint Motion to Dismiss Claims in First Amended Complaint Related to 11 USC § 548(a) ("Rule 19 Motion") (Docket No. 22 in Adv. Pro. No. 10-05049) in each of the Avoidance Actions. Clark opposed both Motions. A hearing on the Motions was held on February 7, 2011. The Bankruptcy Judge granted the Rule 12 Motion, subject to Clark filing

amended complaints, and took the Rule 19 Motion off-calendar pending further proceedings in the Avoidance Actions.

9.      The parties have resolved the matters put in issue by the Amended Complaints in the Avoidance Actions.

## II

## SUMMARY OF THE SETTLEMENT TERMS

There are 19 separate Settlement Agreements between Clark and the Defendants.  At this time the various Settlement Agreements are being circulated for signature by the Defendants and Clark.  Other than the specific sum each of the Defendants will be paying the Estate to settle their respective Avoidance Actions, the terms of the Settlement Agreements are identical.  Attached hereto as Exhibit 1 is a sample of the approved Settlement Agreements for the Court's reference.  Signed copies of all 19 Settlement Agreements will be filed with the Court prior to the hearing on this Motion.

This section of Clark's Motion contains a brief summary of the terms of the Settlement Agreements between Clark and the Defendants.  The terms of the Settlement Agreements control, and in the event of a discrepancy between the terms of the Settlement Agreements and this summary, the terms of the Settlement Agreements shall prevail.  The major terms of the settlements are:

> ➤ Attached hereto as Exhibit 2 is a chart entitled Summary of Avoidance Actions Settlement Consideration and Possible Losses Suffered by the Defendants. Column 3 of Exhibit 2 sets forth the Cash Consideration each Defendant, or group of Defendants, is paying to the Estate in settlement of their respective Adversary Proceeding. On or before ten (10) days following the entry of an order by the Bankruptcy Court approving this Motion, the Defendants shall pay the amount of the Cash Consideration set forth in column 3 of Exhibit 2 to Clark as

Trustee of the Cetus' Estate.

➢ In the event any of the Defendants fail to pay the Cash Consideration as set forth above, then, upon the filing of a declaration by Clark's attorney with this Court in the applicable Adversary Proceeding attesting to the fact the Cash Consideration was not made when due, judgment may be entered by the Bankruptcy Court against the Defendant(s) in the applicable Adversary Proceeding for the amount of the Cash Consideration, plus costs and pre- and post-judgment interest as allowed by law. Furthermore, the judgment shall provide that all attorney's fees and costs incurred by Clark in the enforcement of the judgments may be added to the judgments and enforced the same as if they were part of the original judgments.

➢ Upon payment of the Cash Consideration, the First Amended Complaint in each of the Adversary Proceedings for which the Cash Consideration is received shall be dismissed with prejudice. Clark's attorney shall cooperate with Defendants' attorneys in preparing and filing the documentation necessary to effect the dismissal.

➢ Upon payment of the Cash Consideration, the Defendants paying their Cash Consideration shall be released from the claims set forth in the First Amended Complaints in their respective Avoidance Actions and any other Bankruptcy Code Sections 544 through 550 claims the Trustee could have asserted, if any.

➢ Upon entry of an order by the Bankruptcy Court approving this Motion, Clark and the Cetus Bankruptcy Estate shall be released from any and all claims the Defendants, or each of them, may have against Clark or the Bankruptcy Estate, including any claims that could have been asserted as counterclaims in any of the Adversary Proceedings. The releases, however, shall not release any claims any of the Defendants may have against Marcilin Benvin, any employees of Cetus Mortgage, Ltd. who worked for the company prior to July 9, 2008, and any third parties that may have provided services to Cetus or to the Defendants in connection with any Cetus brokered loan including, but not limited to Ticor Title of Nevada, Inc., Ticor Insurance Services, Inc., any insurance company that may have issued a policy of title insurance in connection with any Cetus brokered loan, and any escrow company that may have provided escrow services for any Cetus brokered loan.

➢ Any Proofs of Claim filed by the Defendants shall be withdrawn by the Defendants, regardless of whether they pay or do not pay the Cash Consideration to Clark. The Defendants shall be obligated to withdraw all Proofs of Claim they actually filed in the Cetus bankruptcy case whether they are specifically identified in the Settlement Agreements or not.

///

III

## POINTS AND AUTHORITIES IN SUPPORT OF THE COMPROMISES

**A.**   **GENERAL AUTHORITIES.** A compromise or settlement in a bankruptcy proceeding is a core proceeding pursuant to the "catch-all" provisions of 28 USC § 157(b)(2)(A) ("matters concerning the administration of the estate) or 28 USC § 157(b)(2)(O) ("other proceedings affecting ... the adjustment of the debtor-creditor or the equity security holder relationship ..."). *See, e.g., In re Charter Co.,* 81 B.R. 90, 93 (M.D.Fla. 1987); *In re Carson,* 82 B.R. 847, 849 (Bankr.S.D.Ohio 1987); *In re Paolino,* 78 B.R. 85, 88 (Bankr. E.D. Pa. 1987) *See also, In re International Distrib. Centers, Inc.,* 103 B.R. 420, 421 (S.D.N.Y. 1989).

FRBP 9019(a) authorizes a debtor-in-possession or trustee, upon court approval, to enter into settlements. The decision whether a settlement should be accepted or rejected lies within the sound discretion of the court. The legal principals that should guide the exercise of the court's discretion in an application for settlement are well established and include the following considerations:

a.   The probability of success in the litigation;

b.   The difficulties, if any, to be encountered in the matter of collection;

c.   The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

d.   The paramount interests of the creditors and a proper deference to their reasonable views in the premises.

*In re A&C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson,* 479 U.S. 854 (1986); *In re Blair,* 538 F.2d 849, 851 (9th Cir. 1976); *In re*

*MGS Mktg.*, 111 B.R. 264, 267 (Bankr. 9th Cir. 1990). See also, *In re The General Store of Beverly Hills*, 11 B.R. 539, 541 (Bankr. 9th Cir. 1981) (in ruling on a request to compromise a dispute, court should consider the expense, benefits, hazards, complexity, the time required to litigate, and whether disallowance of the settlement would result in waste of the estate's assets).

In determining whether to approve a proposed settlement, the bankruptcy court does not substitute its judgment for that of the settlement's proponents. *In re: Bell & Beckwith,* 93 B.R. 569 (B.Ct.N.D.Ohio 1988). The responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact that may be raised regarding the settlement, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness. *In re Energy Co-op, Inc.*, 886 F.2d 921 (7th Cir. 1989); *In re Teltronics Servs., Inc.,* 762 F.2d 185, 189 (2nd Cir. 1985); *International Distrib. Centers,* 103 B.R. at 423; *Bell & Beckwith*, supra. at 574-575; *In re Marshall*, 33 B.R. 42, 43 (Bankr.D.Conn. 1983); Thus a mini-trial on the merits of the claims or a bankruptcy judge's independent investigation into the underlying dispute sought to be compromised is not required. *In re Walsh Constr., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *Blair*, 538 F.2d at 851; *International Distrib. Centers,* 103 B.R. at 423; *In re Carson*, 82 B.R. at 583.

**B.     THE A&C FACTORS.** Of course, the four considerations set forth in the *A&C Properties* case are the controlling factors in the Ninth Circuit and, in this case, an analysis of each of the factors supports approval of the proposed settlements.

**1.     Probability of Success in the Litigation.** This is the ultimate question that can almost never be answered with certainty. In this case Clark feels strongly that

she could prevail on her claims against the Defendants, but much of Clark's evidence will have to be obtained from Cetus' books and records, and they are not in the best of condition. That is not to say the condition of Cetus' poorly maintained, and perhaps doctored, books and records would prevent Clark from proving her claims, only that the complexity of the task is magnified because Clark must rely upon Cetus' books and records. Furthermore, Clark's success in the Avoidance Actions is greatly dependent upon her ability to prove Cetus was operating Ponzi Scheme as compared to engaging in numerous unrelated fraudulent activities.

On the other hand, the Defendants feel equally confident they could successfully defend themselves against Clark's claims. The Defendants believe they have significant defenses to the claims asserted in the First Amended Complaints based upon the fact Cetus placed their money in loans that were not consistent with its representations, some of the loans into which the Defendants' money was placed were poor investments and/or not properly collateralized (i.e. not collateralized as promised), and the Defendants have taken losses on several of the investments arranged by Cetus. The Defendants believe these offsets will more than defeat any claim Clark may have against them. Furthermore, the documentation for the Cetus brokered loans indicate Cetus was merely brokering and servicing the loans and any payments the Defendants received came from the borrowers, not Cetus.

2.    **The Difficulty of Collecting a Judgment.**    Clark cannot state with certainty whether collection would or would not be an issue in this case. The Defendants loaned substantial sums to Cetus' borrowers and there is every reason to believe that most judgments Clark might obtain would be collectable. Some of the

Defendants, however, claim the losses they have sustained as a result of Cetus' conduct have caused them severe financial hardship and collection of judgments against them would be fruitless. All in all, Clark suspects she would be able to successfully collect on most judgments, but not all.

**3. The Complexity of the Litigation and the Attendant Expense and Delay.** This factor tracks the "probability of success" factor to a degree. While at first blush the issues presented by the First Amended Complaints are not terribly complex (did the Defendants receive any voidable, preferential, or fraudulent transfers from the Debtor?), in reality the issues in this case are quite complex. For example, one of Clark's bases for asserting the voidable, preferential, or fraudulent transfer claims against the Defendants is that Cetus was operating a Ponzi scheme and, therefore, payments made by Cetus to the Defendants constituted actual, intentional voidable, preferential and/or fraudulent transfers that were intended to hinder, delay or defraud its creditors. Proving the Ponzi scheme will require significant review and analysis of the Cetus' books and records (which are in a poor condition and which may have been doctored to cover-up the alleged Ponzi scheme). If Clark cannot prove Cetus was operating a Ponzi scheme, literally hundreds, if not thousands, of payments and transactions would have to be traced through Cetus' books.

As another example, the Defendants' good faith in accepting the allegedly unlawful transfers from Cetus is also at issue. In fraudulent transfer cases, "good faith" is not simply a matter of whether the Defendants knew or did not know the transfer was fraudulent. Instead, whether a recipient acted in good faith depends on the totality of circumstances and if there is sufficient evidence to support a finding the recipient should

have been on notice of improper conduct on the part of the Debtor, good faith may not exist. *See, e.g. In re Agriculture Research and Technology Group*, 916 F. 2d 528, 536 (9th Cir. 1990); *In re M&L Business Machine Co., Inc.*, 84 F. 3d 1330, 1338-9 (10th Cir. 1996); and *In re Cohen*, 199 B.R. 709, 719 (9th Cir. BAP 1996).  The issue of the Defendants' good faith could require significant discovery regarding the Defendants' knowledge of the manner in which Cetus conducted its business and whether the Defendants should have been put on notice that Cetus' business operations were suspect.

This Court is aware of the complexity of some of the issues by reason of the Defendants' Rule 12 Motion and their Rule 19 Motion.  Even getting to the point where the issues in the Avoidance Actions could be properly framed has been expensive, and there is no reason to believe the discovery, pre-trial motions or the trial of the matters put to issue by the pleadings would be any less aggressive or less expensive.  Given the complexity of the issues, the burdens of discovery (exacerbated by the condition of Cetus' books and records), the need for detailed analyses of Cetus' books and records by expert witnesses, the sheer volume of documents that would have to be reviewed and analyzed and the time otherwise necessary to prepare for trial and to try the Avoidance Actions, the Trustee could easily spend more than $450,000 pursing her claims, and that estimate may be conservative.

4.    **The Best Interests of the Estate.**  Clearly, it is imperative that Clark evaluate the costs and benefits of the settlements as compared to taking the Avoidance Actions to judgment.  She has done so and believes the proposed settlements outweigh the costs and risks to the Estate pursuing the claims.  The First Amended Complaints

seek millions of dollars from the Defendants, but Clark is proposing to settle the claims

for an aggregate of $300,000. This is largely due to the costs of litigation and difficulties

Clark may face proving her claims. There are other economic benefits to the Estate and

its Creditors over and above the $300,000 Cash Consideration the Estate is to receive.

All of the Defendants are waiving (withdrawing) their claims against the Estate. At a

minimum, the value of the claims being waived by the Defendants is $9,661,294.12.

Column 4 of Exhibit 2 identifies the total value of the Proofs of Claim that have been

filed by each of the Defendants and it reflects the $9,661,294.12 total. To the extent the

Defendants have other claims not summarized in Exhibit 2, they are being waived as

well. The filed claims in this case exceed $47,000,000, and the withdrawal of the

Defendants' Proofs of Claim will reduce the claim base to just over $37,000,000 at most.

If the Trustee has $1,500,000 to distribute (no guaranty) on $37,000,000 in claims, the

withdrawal of the Defendants' claims will benefit other Creditors to the tune of

approximately $320,000.

     The value of the settlements with the Defendants may well have a value in

excess of $1,000,000 to the Estate's other creditors calculated as follows:

| | |
|---|---|
| Cash Consideration | $300,000 |
| Economic value based upon withdrawal of nearly $10,000,000 in claims | $320,000 |
| Estate assets preserved by not taking the matters to trial | $450,000 |
| | $1,070,000 |

     Finally, there is one other, non-economic reason for the Trustee to settle with the

Defendants: the Defendants are also some of the victims of Cetus' fraudulent conduct.

Column 5 of Exhibit 2 lists the portfolio balances, according to Cetus' records, of the Defendants' loans to Cetus' borrowers.    The portfolio balances total more than $21,000,000.  Clearly, some of the Defendants will recover some of the $21,000,000 by way of payments from Cetus' borrowers or foreclosures of deed of trust liens, but they certainly will not recover their full $21,000,000.    Some lenders received beneficial interests in second position deeds of trust (although Cetus promised they would always be secured by first position deeds of trust) and have lost their collateral by reason of foreclosures completed by the first deed of trust holders.  Some lenders have had to foreclose their deed of trust liens due to borrower defaults, but the value of their collateral is worth far less than the money loaned.  Other lenders have worked with borrowers to avoid having to foreclose their deed of trust liens, but in most instances the lenders are still not recovering the full amount of their loans.  In the final analysis the Defendants, as a group, have suffered by reason of Cetus' fraudulent conduct and this fact should be taken into consideration in this matter.

For all of the reasons set forth herein, the Trustee believes the settlements for which she seeks this Court's approval are in the best interests of the Estate and its remaining creditors.

///

///

///

///

///

///

///

## VI

## CONCLUSION

For all of the reasons set forth above, Clark respectfully requests that this Court approve Clark's settlement of the Estate's claims against the Defendants upon the terms forth in the Settlement Agreement attached hereto as Exhibit 1 and the Summary of Consideration set forth in Exhibit 2.

DATED this 11th day of May, 2011.

WOODBURN and WEDGE

By_____
         John F. Murtha, Esq.
         Attorneys for Trustee
         Angelique L.M. Clark

# EXHIBIT 1

JOHN F. MURTHA, ESQ.
**Nevada Bar No. 835**
BRENOCH R. WIRTHLIN, ESQ.
**Nevada Bar No. 10282**
WOODBURN AND WEDGE
Sierra Plaza
6100 Neil Road, Ste. 500
Post Office Box 2311
Reno, Nevada 89505
Telephone: 775-688-3000
Facsimile : 775-688-3088
jmurtha@woodburnandwedge.com

Attorneys for Trustee
Angelique L.M. Clark

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA
* * *

| | |
|---|---|
| In re: | Case No. BK-08-51131-GWZ |
| | Chapter 7 |
| CETUS MORTGAGE, LTD. | |
| Debtor. | |
| _____/ | |
| ANGELIQUE L.M. CLARK, | Adv. No. 10-05049-GWZ |
| TRUSTEE, | |
| Plaintiff, | **SETTLEMENT AGREEMENT** |
| vs. | |
| RALPH L. ALBRIGHT and | |
| CAROL L. ALBRIGHT, Trustees of | |
| the Ralph Albright Family Trust; | |
| RALPH L. ALBRIGHT, Trustee of the | |
| Ralph Albright Drilling Co. Profit | |
| Sharing Plan and Trust; and | |
| NEVADA COMPUTER LEASING, | |
| a Nevada Corporation, | |
| Defendants. | |
| _____/ | |

1

2

3         This Settlement Agreement ("Agreement") which is entered into by and between
Angelique L. M. Clark ("Clark"), in her capacity as the Trustee of the Chapter 7

4    Bankruptcy Estate of Cetus Mortgage, Ltd., pending before the United States
Bankruptcy Court for the District of Nevada as Case No. 08-51131, and the Defendants

5    named in the above captioned Adversary Proceeding (the "Defendants"), shall become
effective upon approval by the United States Bankruptcy Court for the District of Nevada

6    ("Bankruptcy Court") and is based upon the following facts and circumstances:

7         1.    Cetus Mortgage, Ltd. ("Cetus") was a Nevada corporation with its principal

8    place of business in Washoe County, Nevada.

9         2.    Cetus was licensed as a mortgage company by the Mortgage Lending
Division of the State of Nevada Department of Business and Industry and was engaged in

10   the business of brokering and servicing loans secured by residential and commercial
properties located mostly in Northern Nevada.

11

12        3.    Typically, loans brokered by Cetus were funded by investments solicited
from third party lenders willing to loan funds to Cetus borrowers.  The loans brokered by

13   Cetus were occasionally funded by a single lender, but in most instances the loans were
funded with monies pooled from a group of lenders.

14

15        4.    Cetus allowed its Nevada mortgage company license to expire without
renewal on June 30, 2008, and in July 2008, the State of Nevada, Department of

16   Business and Industry, Division of Mortgage Lending seized Cetus' assets.

17        5.    On July 9, 2008, Cetus filed a voluntary petition for relief under Chapter 11
of the United States Bankruptcy Code commencing Case No. 08-51131 ("Bankruptcy

18   Case") with the United States Bankruptcy Court for the District of Nevada ("Bankruptcy
Court").  Clark was appointed Trustee of Cetus' bankruptcy estate.  The Chapter 11

19   proceedings were subsequently converted to proceedings under Chapter 7.

20

21        6.    On November 26, 2008, the Trustee initiated an adversary Complaint
against Marcilin Benvin ("Benvin"), Cetus' sole officer, director and shareholder at the time

22   Cetus filed Bankruptcy, alleging claims for, *inter alia*, conversion, embezzlement, breach
of fiduciary duty, and injunctive relief.  The adversary proceeding was resolved by

23   settlement, and on June 17, 2010, a stipulated judgment was entered against Benvin in
the total principal amount of Three Million Dollars ($3,000,000).  In the judgment, the court

24   determined the judgment to be nondischargeable in any bankruptcy proceeding Benvin
may file pursuant to the provisions of 11 USC § 523(a)(2), (4), and (6).

25

26        7.    Prior to Cetus seeking bankruptcy relief, the Defendants participated as
lenders in loans that had been brokered by Cetus.

27

28   ///

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Settlement Agreement P.2

1

2    8.    On September 24, 2010, the Trustee filed a First Amended Complaint
against the Defendants seeking to set aside certain alleged fraudulent transfers
3    pursuant to 11 USC § 548 and certain alleged preferential transfers pursuant to 11 USC
4    § 547. On September 24, 2010, and September 27, 2010, the Trustee also filed First
Amended Complaints against other similarly situated Cetus lenders seeking to set aside
5    certain other alleged fraudulent transfers pursuant to 11 USC § 548 and, in some
instances, alleged preferential transfers pursuant to 11 USC § 547. The defendants in
6    those other actions will be referred to herein as the "Other Defendants."

7    9.    In the Amended Complaint against the Defendants, the Trustee alleged that
8    based upon her investigations, Cetus was engaged in a phony investment scheme,
characterized as a Ponzi scheme, in which the following occurred:
9

10         A.    Monies paid by later investors were, at times, used to pay
returns on investments to earlier investors while no actual
11               return had been received on behalf of the earlier investors;
         B.    Monies that properly belonged to certain investors were used
12               to continue to pay interest on investments made by other
13               investors in an attempt to cover up the fact the other
investors' loans had gone into default; and
14         C.    Monies invested by later investors were used to fund prior
loans from which Cetus had improperly diverted funds to
15               cover up the fact loan funds had been misused.

16    First Amended Complaint, ¶¶ 15-16.

17    10.    On November 18, 2010, the Defendants and the Other Defendants filed a
18    Joint Motion to Dismiss for Failure to State a Claim ("Rule 12 Motion") (Docket No. 21 in
Adv. Pro. 10-05049) and a Joint Motion to Dismiss Claims in First Amended Complaint
19    Related to 11 USC § 548(a) ("Rule 19 Motion") (Docket No. 22 in Adv. Pro. No. 10-
05049). The Trustee filed oppositions to both Motions. A hearing on the Motions was
20    held on February 7, 2011. The Bankruptcy Judge granted the Rule 12 Motion subject to
21    the Trustee filing an amended complaint and took the Rule 19 Motion off-calendar
pending further proceedings in the actions against the Defendants and the Other
22    Defendants.

23    11.    The parties have resolved the matters put in issue by the Amended
Complaint.
24

25    NOW, THEREFORE, for good and valuable consideration, Clark and the
Defendants agree as follows:
26

27    ///

28

Cetus Mortgage; Case No. 08-51131 and Related Adversary Proceedings; Settlement Agreement P.3

## SETTLEMENT TERMS

**A.    Payment to Cetus Estate.**  On or before fourteen (14) calendar days following the entry of an order by the Bankruptcy Court approving this Agreement, the Defendants shall pay Clark the total sum of Fifty-Seven Thousand Seven Hundred Ninety-Five and 74/100 Dollars ($57,795.74) (the "Cash Consideration") for the benefit of the Cetus Bankruptcy Estate.

**B.    Entry of Judgment Upon Failure to Pay.**  In the event the Defendants fail to pay the Cash Consideration as set forth in Paragraph A, above, then, upon the filing of a declaration by Clark's attorney with this Court in the above captioned Adversary Proceeding, attesting to the fact the payment was not made when due, then judgment may be entered by the Bankruptcy Court against the Defendants, jointly and severally, in the amount indicated in Paragraph A above plus costs and pre- and post-judgment interest as allowed by law. Furthermore, the judgment shall provide that all attorney's fees and costs incurred by Clark in the enforcement of the judgment in the above captioned Adversary Proceeding may be added to the judgment and enforced the same as if they were part of the original judgment.

**C.    Dismissal of Clark's Complaint with Prejudice.**  Upon payment of the Cash Consideration, the First Amended Complaint in the above captioned Adversary Proceeding shall be dismissed with prejudice with all parties to pay their own attorney's fees and costs.  Clark's attorney shall cooperate with the Defendants' attorney in preparing and filing the documentation necessary to effect the dismissal.

**D.    Release of Claims by Bankruptcy Estate.**  Upon payment of the Cash Consideration, the Defendants and their heirs, successors and assigns shall all be released from the claims set forth in the First Amended Complaint on file in the above captioned adversary proceeding and any other 544 through 550 claims the Trustee could have asserted, if any.

**E.    Release of Claims by the Defendants.**  Upon entry of an order by the Bankruptcy Court approving this Settlement Agreement, Clark, her employees and attorneys, their heirs, successors and assigns, and the Cetus Bankruptcy Estate shall be released from any and all claims the Defendants may have, or claim to have, against Clark, her employees and attorneys, their heirs, successors and assigns, or the Cetus Bankruptcy Estate, including any claims that could have been asserted as Counterclaims in the above captioned adversary proceeding.  This release, however, **shall not release** any claims any of the Defendants may have against Marcilin Benvin, any employees of Cetus Mortgage, Ltd. who worked for the company prior to July 9, 2008, and any third parties that may have provided services to Cetus or to the Defendants in connection with any Cetus brokered loan including, but not limited to Ticor Title of Nevada, Inc., Ticor Insurance Services, Inc., any insurance company that may have issued a policy of title insurance in connection with any Cetus brokered loan, and any escrow company that may have provided escrow services for any Cetus brokered loan.  In addition, and

notwithstanding the first sentence of this section E and section J below, this release **is not intended to, and does not, release or impair** any claim asserted by any insurance company that may have issued a policy of title insurance in connection with any Cetus brokered loan, or any escrow company that may have provided escrow services for any Cetus brokered loan, as subrogee claiming under or through any Defendant.

F.    **Proofs of Claim.**  The Defendants filed the following proof of claim:

| NUMBER | AMOUNT |
|--------|--------|
| 477 | 20,000.00 |

The list of claims is a summary of claims taken from the Bankruptcy Court's claims register and it is possible some claims filed by the Defendants have not been properly identified or discovered.  At the time the Defendants deliver the Cash Consideration to the Trustee, they shall also file pleadings with the Bankruptcy Court in which they affirmatively withdraw any and all proofs of claim they may have filed in the Bankruptcy Case, whether listed above or not.

G.    **Payment of Costs and Fees.**  Except as provided in Paragraph B, above, each party shall pay its own attorney's fees and costs incurred in the adversary proceeding and in connection with the negotiation and drafting of this Agreement without recourse against any other party hereto.

H.    **Further Assurances.**  The parties agree to execute and deliver any and all further documents necessary to evidence and consummate the settlement and results contemplated by this Agreement.

I.    **No Admission.**  The purpose of this Agreement is to resolve and settle the claims referenced herein, all of which are disputed, upon the terms and conditions set forth herein, and neither this Agreement nor any of the discussions leading up to the resolutions set forth herein shall constitute or evidence an admission as to any matter by any of the parties hereto.

J.    **Successors Bound.**  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective representatives, heirs, successors and assigns.

K.    **Execution.**  This Agreement may be executed in any number of separate counterparts, all of which, when taken together, shall constitute one and the same instrument, admissible into evidence, notwithstanding the fact that all parties did not sign the same counterpart.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart hereof.  Any party delivering an executed counterpart of this Agreement by facsimile shall also deliver a manually executed counterpart hereof, but the failure to deliver a manually executed counterpart hereof shall not affect the validity, enforceability, and

binding effect of this Agreement.

    **L.**    **Reliance.** The parties acknowledge to each other that each was advised or was represented by independent legal counsel of each party's own choice throughout all of the negotiations which preceded the execution of this Agreement and that each such party has executed this Agreement after being so advised or receiving such advice. The parties acknowledge that each party has executed this Agreement without reliance upon any promise or representation of any person or persons acting for or on behalf of the other, except as expressly set forth in this Agreement. Each party further acknowledges that such party and such party's counsel has had an adequate opportunity to make whatever investigation or inquiry it may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof.

    **M.**    **Integration.** This Agreement supersedes all prior representations and agreements, if any, between the parties to this Agreement and their legal counsel relating to the subject matter hereof. This Agreement, when executed, contains the entire and only understanding between the parties regarding the subject matter hereof. It may not be altered, amended or extinguished, nor may any rights hereunder be waived, except by a writing which expressly refers to this Agreement and is signed subsequent to the execution of this Agreement by the parties to this Agreement.

    **N.**    **Enforcement of Rights.** The prevailing party (the "Prevailing Party") in any litigation, arbitration, bankruptcy proceeding, or other formal or informal resolution (collectively, a "Proceeding") of any claims brought by any party to this Agreement against any other party to this Agreement based upon, arising from, or in any way related to this Agreement or the transactions contemplated herein, including without limitation contract claims and all other common law or statutory claims (collectively, the "Claims"), shall be entitled to recover from such other party all its fees and costs incurred in connection with the Proceeding, including without limitation all its attorney's fees and costs, all its expert witness and/or consultant's fees and costs, all its paralegal fees and costs, and all its other costs and expenses, regardless of whether such costs are otherwise statutorily recoverable (collectively, the "Fees and Costs").

    **O.**    **Controlling Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Nevada and Federal bankruptcy laws, without regard to principles of conflicts of law.

    **P.**    **Construction.** This Agreement shall be construed as though drafted by all of the parties hereto and shall not be construed against or in favor of any one party. On the contrary, this Agreement has been reviewed by all parties hereto and their counsel, and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the parties hereto.

1

2        **Q.**    **Bankruptcy Court Approval.** This Agreement and the parties' rights and

3 obligations hereunder are subject to the Bankruptcy Court's approval of the settlements
contemplated herein pursuant to the provisions of FRCP 9019 after notice to all

4 creditors of the Cetus estate and a hearing. Additionally, the parties agree that they will
fully support the settlement contemplated by this Agreement at the hearing on the

5 motion to approve the compromise. Counsel for Clark shall file the motion with the
Bankruptcy Court to approve this Agreement.

6

7        Dated this ____ day of _____, 2011

8

9                             _____
                                Angelique L.M. Clark

10                               Trustee of the Cetus Bankruptcy Estate

11        Dated this ____ day of _____, 2011

12

13                             _____
                             Ralph L. Albright

14                             Trustee of the Ralph Albright Family Trust;

                             Trustee of the Ralph Albright Drilling Co.:

15                             Profit sharing Plan and Trust; and

                             President of NEVADA COMPUTER

16                             LEASING

17        Dated this ____ day of _____, 2011

18

19                             _____
                             Carol L. Albright

20                               Trustee of the Ralph Albright Family Trust

21

22        Approved as to form:               Approved as to form:

23

24        _____        _____
        John F. Murtha, Esq.            Jeffrey L. Hartman, Esq.

25        Attorney for Angelique L.M. Clark    Attorney for Ralph L. Albright, Carol L.
                                                Albright, and NEVADA COMPUTER

26                                           LEASING

27

28

# EXHIBIT 2

## SUMMARY OF AVOIDANCE ACTIONS SETTLEMENT CONSIDERATION AND POSSIBLE LOSSES SUFFERED BY THE DEFENDANTS

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| ADV. PRO. | DEFENDANTS | CASH CONSIDERATION | TOTAL OF PROOFS OF CLAIM FILED | CETUS PORTFOLIO BALANCE |
| 10-5049 | Albright Family Trust | 57,795.74 | 0.00 | 895,000.00 |
| | Albright Drilling PSP | | 20,000.00 | 1,208,655.94 |
| | Nevada Computer Leasing | | 0.00 | 90,000.00 |
| 10-5050 | Becker Family Trust | 16,817.22 | 1,525,000.00 | 1,650,000.00 |
| 10-5051 | Bible Mousel PSP | 5,359.44 | 203,000.00 | 300,000.00 |
| | Bible Family Trust | | 0.00 | 0.00 |
| 10-5053 | Brierley Family Trust | 30,911.65 | 0.00 | 1,376,000.00 |
| | Brierley Cons. Pens. Trust | | 2,623,000.00 | 1,560,000.00 |
| 10-5055 | Business and Prof. Coll. Serv. | 7,583.90 | 126,000 | 799,000.00 |
| 10-5057 | Caranica, Nick and Stella | 9,802.09 | 820,000.00 | 825,000.00 |
| 10-5060 | Fricke Family Trust | 12,568.95 | 1,600,000.00 | 1,100,000.00 |
| 10-5061 | Harden Family Trust | 5,889.36 | 572,000.00 | 535,000.00 |
| 10-5062 | Hickerson Family Trust | 3,855.74 | 507,175.34 | 500,000.00 |
| 10-5065 | Lindell Family Trust | 7,749.51 | 116,850.00 | 114,000.00 |
| 10-5066 | Lindell Painting Pens. Plan | 13,887.39 | 267,800.00 | 0.00 |
| 10-5068 | Morrey, Cynthia | 20,410.07 | 696,813.00 | 1,874,449.69 |
| 10-5069 | Moss, Barbara | 8,564.36 | 0.00 | 438,878.21 |
| 10-5074 | Starkweather Family Trust | 6,772.72 | 563,655.78 | 434,000.00 |
| 10-5075 | Tuttle, Jack and Nancy | 16,968.04 | 0.00 | 775,000.00 |
| | Tuttle, Steven | | 0.00 | 510,000.00 |
| 10-5076 | Young, George | 21,768.89 | 0.00 | 1,200,000.00 |
| | Young, Shirley | | 0.00 | 895,000.00 |
| 10-5077 | Douglass, John and Carol | 12,282.68 | 20,000.00 | 1,003,000.00 |
| | Douglass, Daniel | | 0.00 | 0.00 |
| | Jack and Barbara Douglass Living Trust | | 0.00 | 0.00 |
| 10-5078 | Urologic Surgeons, PSP | 3,420.29 | 0.00 | 145,149.49 |
| | Urologic Surgeons PSP FBO Steven Moss | 5,342.48 | 0.00 | 672,000.00 |
| | Urologic Surgeons PSP FBO John Scott | 2,333.81 | 0.00 | 0.00 |
| 10-5079 | Moss Family Trust | 11,811.23 | 0.00 | 997,532.22 |
| | MossNevada, LLC | 18,104.45 | 0.00 | 1,483,919.43 |
| | **TOTALS** | **300,000.01** | **9,661,294.12** | **21,381,584.98** |